## REYNOLDS, Inspector of Immigration, et al. v. HASKINS.

(Circuit Court of Appeals, Eighth Circuit. September 17, 1925.)

No. 6869.

1. Citizens ⬤⟝13—Native-born citizen held not to acquire citizenship lost by expatriation by resumption of residence in this country.

Native-born citizen of United States, who removed to Canada and became a British subject, *held* not to become a citizen of United States in view of Act July 27, 1868, § 1 (Comp. St. § 3955), Act March 2, 1907, § 2 (Comp. St. § 3959), and Treaty between the United States and Great Britain of May 13, 1870, by resumption of his residence in this country; his determination to become a citizen thereof as manifested by his registration under Selective Draft Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 2019a, 2019b, 2044a et seq.), Const. Amend. 14, § 1, not preventing citizenship acquired by birth or naturalization from being lost by expatriation.

2. Citizens ⬤⟝13—Citizen, who expatriates himself, is no longer a citizen of this country, but an alien.

Where a native-born citizen of the United States expatriates himself, he is no longer a citizen of this country, but an alien.

3. Aliens ⬤⟝60—Alien cannot acquire citizenship in United States by becoming a resident thereof.

An alien cannot acquire citizenship in the United States merely by becoming a resident thereof.

4. Aliens ⬤⟝46—Native-born citizen, who expatriated himself and became a British subject, held subject to removal as an "alien."

Native-born citizen, who expatriated himself and became a citizen and subject of Great Britain, *held* to be an "alien," within meaning of Immigration Act 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼a et seq.), and hence subject to removal.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Alien—Alienage.]

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Habeas corpus by Frederick L. Haskins, alias Fred L. Harris, against E. P. Reynolds, as Inspector of the Immigration Department of the United States, and others. From an order discharging petitioner from custody, defendants appeal. Reversed and remanded, with instructions.

Alton H. Skinner, Asst. U. S. Atty., of Topeka, Kan. (Al. F. Williams, U. S. Atty., of Topeka, Kan., on the brief), for appellants.

L. S. Harvey, of Kansas City, Kan. (W. E. Stickel, of Kansas City, Kan., on the brief), for appellee.

Before STONE and VAN VALKENBURGH, Circuit Judges, and PHILLIPS, District Judge.

PHILLIPS, District Judge. This is an appeal from an order in a habeas corpus proceeding, discharging from custody Frederick L. Haskins (hereafter called appellee), who was being held by an immigration officer, under a warrant of deportation issued by the Assistant Secretary of Labor. Haskins was a native-born citizen of the United States. About the year 1900 he removed to Canada. He applied for and received a certificate of naturalization in Canada and became a British subject. Thereafter, in Canada, he was tried and convicted of the crime of rape and sentenced to prison for a term of five years. After serving about one year of the sentence, he was granted what is known in Canada as a "ticket of leave." Thereafter, and in October, 1917, he returned to the United States and took up his residence at Riverton, Wyo. In September, 1918, he registered for the draft under the Selective Draft Act (40 Stat. 76 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 2019a, 2019b, 2044a et seq.]) at Lander, Wyo., and in his registration card declared that he was a native-born citizen of the United States. Thereafter, he removed to Fort Worth, Tex. In October, 1922, he went from Fort Worth to Vancouver, British Columbia, on a matter of business. Early in November, 1922, he was arrested at Vancouver and returned to the United States to answer a charge of using the mails in furtherance of a scheme to defraud. He was indicted, pleaded guilty, and was sentenced to pay a fine of $1,000 and to be imprisoned for one year and one day in the United States penitentiary at Leavenworth, Kan.

Upon his release from the penitentiary he was arrested by the immigration authorities and a warrant of deportation was issued after a hearing. He then brought this proceeding to obtain his discharge.

[1] Appellee has never been naturalized in the United States. He contends, however, that he is now a citizen of the United States by reason of his resumption of residence in this country and his determination to become a citizen thereof. He further contends that he is not an alien within the meaning of the Immigration Act of February 5, 1917 (39 Stat. 874 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼a et seq.]), under which the deportation proceedings were brought.

Since early in its history, this nation has recognized the right of expatriation. Ex parte Griffin (D. C.) 237 F. 445, 449; MacKenzie v. Hare et al., 239 U. S. 299, 309, 36 S. Ct. 106, 60 L. Ed. 297, Ann. Cas. 1916E, 645; 11 C. J. 783.

By the act of July 27, 1868, § 1 (15 Stat. 223 [Comp. St. § 3955]), the Congress of the United States declared the right of expatriation to be "a natural and inherent right of all people, indispensable to the enjoyment of the rights of life, liberty, and the pursuit of happiness."

The act of March 2, 1907, § 2 (34 Stat. 1228 [Comp. St. § 3959]), provides that "any American citizen shall be deemed to have expatriated himself when he has been naturalized in any foreign state in conformity with its laws."

[2] When appellee was naturalized in Canada, he became a naturalized citizen and subject of Great Britain. It was a voluntary and effectual expatriation. He was no longer a citizen of the United States, but an alien. Such is the effect of expatriation. In the case of Chacon v. 89 Bales of Cochineal, 1 Brock. 478, 5 Fed. Cas. p. 390, No. 2568, Mr. Chief Justice Marshall in an opinion as Circuit Justice, speaking on the effect of expatriation, said: "I deem it unnecessary, in this case, to discuss the abstract question of this alleged natural right to dissolve the connection between an individual and his country, and will only observe, that the principle is often of more serious consequence to those who would shield particular acts by its assertion, than they suppose. The individual who divests himself of the obligations of a citizen, if this be within the power of an individual, loses the rights which are connected with those obligations. He becomes an alien. His lands, if he has any, are escheatable. He cannot

recover these rights by residence, but must go through that process which the laws prescribe for the naturalization of an alien born." See, also, 11 C. J. 786, and 14 Opinions Attorney General, 295.

But appellee says that by virtue of the provisions of the Fourteenth Amendment to the Constitution of the United States, he became a citizen of this country on resuming his residence here. Section 1 of the Fourteenth Amendment to the Constitution declares that "all persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside." But this provision of the Constitution does not prevent citizenship acquired either by birth or naturalization from being lost by expatriation. MacKenzie v. Hare et al., supra. Neither does it restore to a person citizenship acquired by birth, and lost by expatriation when such person thereafter resumes his residence in this country.

[3] Appellee became a citizen of the United States by virtue of his birth therein. His status as an American citizen continued until he lost the same through expatriation. Thereupon he became an alien. An alien cannot acquire citizenship in the United States merely by becoming a resident of the United States.

Under the Treaty of May 13, 1870 (16 Stat. 775), entered into between the United States and Great Britain, there was, among other things, provided:

Article I. "Citizens of the United States of America who have become, or shall become, and are naturalized according to law within the British dominions as British subjects shall, subject to the provisions of article II, be held by the United States to be in all respects and for all purposes British subjects, and shall be treated as such by the United States.   *   *   *

"Reciprocally, British subjects who have become or shall become, and are naturalized according to law within the United States of America as citizens thereof, shall, subject to the provisions of article II, be held by Great Britain to be in all respects and for all purposes citizens of the United States, and shall be treated as such by Great Britain.

Article III. "If any such citizen of the United States as aforesaid naturalized within the dominions of Her Britannic Majesty, should renew his residence in the United States, the United States government may, on his own application, and on such conditions as that government may think fit to impose, readmit him to the character and privileges of a citizen of the United States, and Great Britain shall not in that case claim him as a British subject on account of his former naturalization."

"In the same manner, if any such British subject as aforesaid naturalized in the United States, should renew his residence within the dominions of Her Britannic Majesty, Her Majesty's government may, on his own application, and on such conditions as that government may think fit to impose, readmit him to the character and privileges of a British subject, and the United States shall not in that case claim him as a citizen of the United States on account of his former naturalization.

It will be noted that a citizen of the United States naturalized within the dominions of Great Britain can be readmitted as a citizen of the United States only upon his own application and on such conditions as the United States government shall impose. This government has imposed no special conditions but has generally provided for the naturalization of aliens.

We conclude that appellee could only reacquire American citizenship through the process of naturalization.

[4] Is appellee an alien within the meaning of the Immigration Act of 1917 (39 Stat. 874 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼a et seq.]), pursuant to the provisions of which the order of deportation was made?

This act defines an "alien" as follows: "The word 'alien' wherever used in this act shall include any person not a native-born or naturalized citizen of the United States." Section 1, 39 Stat. 874 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼a]. The claim is that appellee is a native-born citizen of the United States. True it is that at one time he was a native-born citizen of the United States, but he expatriated himself by naturalization in a foreign country. After his expatriation he was still a native but no longer a citizen of the United States. At the time of his re-entry into the United States, and at the time of the order of removal, he was not a native-born citizen, but an alien as defined in the Immigration Act of 1917, and was subject to removal under the terms of that act.

The cause is therefore reversed and remanded, with instructions to restore the appellee to the custody of the immigration officer.