## UNITED STATES ex rel. ROJAK v. MAR-SHALL, District Director of Immigration.

District Court, W. D. Pennsylvania. April 1, 1929.

No. 46.

M. M. Edmundson and Thos. E. Whitten, both of Pittsburgh, Pa., for relator.

John D. Meyer, U. S. Atty., and Zeno Fritz, Asst. U. S. Atty., both of Pittsburgh, Pa., for respondent.

McVICAR, District Judge. Stefan Rojak was arrested by virtue of an order from the Assistant to the Secretary of Labor, and an order of deportation was made on the ground that he was an alien who had made an illegal entry into the United States. Rojak · filed his petition for a writ of habeas corpus in this court, and alleged in support thereof that his arrest and detention was illegal, because he was a citizen of the United States. The government filed an answer, denying the allegation of citizenship. At the hearing it was stipulated that the evidence taken by the immigration authorities should be considered as the evidence in the habeas corpus proceeding. From this evidence we find the following facts:

The relator, Stefan Rojak, was born in the borough of Braddock, Allegheny county, Pennsylvania, March 28, 1900. In the year 1905 he returned with his mother to Czecho-Slovakia; his father returning a few years later. He remained continuously in Czecho-Slovakia, making it his home, from 1905 to April, 1925; a period of 20 years. He received his schooling in that country. He was married June 10, 1919, and has a wife and two children with whom he lived in Czecho-Slovakia until his departure therefrom, being a period of approximately 4 years after he arrived at the age of 21 years. He entered the military service of that country October 3, 1921, and after enlistment took the oath of allegiance thereto. He remained in the military ·service until November 21, 1922. When he left Czecho-Slovakia, in April, 1925, he procured a passport into Canada from that country, representing himself to be a citizen of Czecho-Slovakia. He arrived in Quebec, in the province of Ontario, Canada, April 25, 1925. From Quebec he went to Windsor. For a short time he made his home in Windsor and worked in Detroit, Mich. On January 28, 1926, he entered the United States at Detroit, and from there came to Allegheny county, Pennsylvania, to the community in which he was born. On October 26, 1928, he was arrested. At the first hearing he stated that he considered himself·a citizen of Czecho-Slovakia, and at the second hearing (where he was represented by counsel) he claimed to be a citizen of the United States.

The government admits that Rojak, at the time of his birth, was a citizen of the United States, and that he remained a citizen of the United States until he arrived at the age of 21 years, but by reason of the aforesaid facts claims he has expatriated himself and is not now a citizen of the United States.

The question, therefore, is whether Rojak was a citizen of the United States when he entered therein, January 28, 1926. "Expatriation is the voluntary renunciation of one's nationality and allegiance by becoming a citizen of another country." 11 C. J. 783.

Rev. St. § 1999, being section 15 of the U. S. Code (8 USCA), states:

"Whereas, the right of expatriation is a natural and inherent right of all people, indispensable to the enjoyment of the rights of life, liberty, and the pursuit of happiness. * * * Therefore any declaration, instruction, opinion, order, or decision of any officer of the United States which denies, restricts, impairs, or questions the right of expatriation, is declared inconsistent with the fundamental principles of the republic."

The Act of March 2, 1907, being section 17 of the U. S. Code (8 USCA), provides that:

"Any American citizen shall be deemed to have expatriated himself when he has been naturalized in any foreign state in conformity with its laws, or when he has taken an oath of allegiance to any foreign state."

■ Rojak having taken an oath of allegiance to Czecho-Slovakia, when he entered into the military service thereof in 1921, expatriated himself under the above act. Relator contends, however, that there is no evidence to support that finding. Under the laws of Czecho-Slovakia (as per stipulation of the parties), every male entering into the military service thereof is compelled to take an oath of allegiance to that country.

There is a presumption that Rojak complied with the law and swore allegiance to Czecho-Slovakia. This presumption is strengthened by his remaining in Czecho-Slovakia and the making of that country his home from the time he left the military service, November 21, 1922, to April, 1925; that he represented himself as a citizen of Czecho-Slovakia when he procured a passport to enter Canada; that he entered the United States by the way of Canada; and that he claimed Czecho-Slovakian citizenship at the first hearing in the matter of deportation. The only evidence to the contrary was the evidence of Rojak as follows:

"Q. When you were taken into the Czecho-Slovakia army, did you make oath according to their law? A. No."

The immigration authorities evidently believed that this answer did not refer to the oath of allegiance, or, if it did, did not believe what the witness said in answer to the question. Under the circumstances developed by the testimony, some of which are referred to above, the court is of the opinion that this conclusion was justified.

■ Is expatriation limited to cases where an American citizen has been naturalized in a foreign state, or has taken an oath of allegiance to a foreign state? In 11 C. J. 784, it is stated:

"In order that expatriation may be considered to have taken place there must be an actual removal from the country of which the individual is then a citizen or a subject, made voluntarily by a person of full age and under no disability as the result of a fixed determination to change his domicile, as well as to throw off the former allegiance and become a citizen or a subject of a foreign power. * * * In order to forfeit one's citizenship, an actual or express renunciation is not necessary; mere absence for a prolonged period, without intention to return, may be sufficient. The general rule adopted by the state department of the United States government, with reference to loss of citizenship by continuous residence abroad, is to the effect that a continued residence abroad for three years, after the attainment of majority, produces a loss of citizenship, unless it is clearly proved that the animus revertendi existed."

In United States v. Husband, 6 F.(2d) 957, the Circuit Court of Appeals, Second Circuit, in a case in which the facts were analogous, indicated that it was the court's opinion that there may be expatriation by methods other than that specified in the act above, and that the facts in that case would justify a finding of expatriation.

■ I do not think that Congress intended to limit expatriation to cases where a citizen has been naturalized, or has taken an oath of allegiance to a foreign state. The continued residence of the relator with his family from the time that he arrived at the age of 21 years, in March, 1921, to April, 1925, the military service that he rendered to that country, the statement made by him in procuring his passport, his entry into the United States by the way of Canada, and his statement to the immigration authorities of his claim of citizenship in Czecho-Slovakia at the first hearing, justify the conclusion that the relator renounced his citizenship in the United States by becoming a citizen of Czecho-Slovakia.

The petition is refused, and the relator, Stefan Rojak, is remanded to the custody of W. H. Marshall, District Director of Immigration, at Pittsburgh, Pa.