McCAMPBELL v. McCAMPBELL et al.

No. 1007.

District Court, W. D. Kentucky.

Feb. 6, 1936.

R. Ruthenberg, of Louisville, Ky., and Harvey H. Smith, of Cincinnati, Ohio, for plaintiff.

Gilbert Burnett, of Louisville, Ky., for defendants Georgia McCampbell Miller, Francis H. Miller, Lelia McCampbell Anderson, and Roberta McCampbell.

HAMILTON, District Judge.

This case is pending before me on a motion to dismiss under Equity Rule 29 (28 U.S.C.A. following section 723).

In May, 1901, Amos G. McCampbell, Jr., ward of the plaintiff, was by a judgment of the Jefferson county circuit court of Kentucky adjudged insane, pursuant to the laws of the commonwealth. This judgment has never been modified or set aside.

McCampbell left Kentucky in 1903 and took up his residence in South Africa, and on August 22 of that year joined the Cape Mounted Police, District No. 2, Kimberly, Cape Colony, South Africa, thereby enlisting in the military forces of the British Empire, at which time he was required to, and did, take the oath of allegiance to that country. Afterwards—the date not shown in the record—he left the British Empire and returned to Kentucky.

On April 26, 1935, by an order entered in the circuit court of Jefferson county, Ky., criminal branch, pursuant to the judgment entered by that court in May, 1901, Ben J. Johnson, plaintiff, was appointed committee for the plaintiff McCampbell, as provided under the statutory laws of the commonwealth. He qualified as such, and has, since that time, been so acting.

On October 26, 1935, this action was instituted by the committee against several defendants, brothers and sisters of his ward, their husbands, wives, and descendants, seeking to recover from them approximately $9,583, and an accounting of rents, issues, and profits, claimed as a result of a fraudulent conspiracy formed and executed by the defendants and their attorneys.

The jurisdiction of this court is sought on the ground of diversity of citizenship. The defendants Georgia McCampbell Miller, Francis H. Miller, Lelia McCampbell Anderson, and Roberta McCampbell move to dismiss the bill as amended on the ground that diversity of citizenship does not exist. They contend plaintiff's ward is not a citizen of the British Empire, and further that the real party in interest is not the ward, but the committee. If either of these positions is correct, this court lacks jurisdiction.

■ Under 34 Stat. 1228, 1229 (8 U.S.C.A. c. 1, § 17), an American citizen expatriates himself when he takes an oath of allegiance to any foreign state. The early common-law doctrine of perpetual and unchangeable allegiance to the country of one's birth no longer prevails under international law. The phrase "once an Englishman, always an Englishman," has yielded to the freedom of the peoples of the earth to change their citizenship almost at will.

The Congress, in response to the modern demand of mankind to roam the face of the earth, has made it easy for a dissatisfied American citizen to move to a foreign country and there take up permanently his abode and renounce his allegiance to his native land.

■ The form of oath required of a British soldier before becoming a member of its army is as follows: "I, ———, do make oath that I will be faithful and bear allegiance to His Majesty, King Edward VIII, his heirs and successors, and that I will, as in duty bound, honestly and faithfully defend his Majesty, his heirs and successors, his person, crown, and dignity against all enemies, and will observe and obey all orders of His Majesty, his heirs and successors, and all of the Generals and officers set over me, so help me, God."

Under the express language of the federal statute, a person taking such an oath ceases from that day to be a citizen of the United States. Ex parte Griffin (D.C.) 237 F. 445, 446; Camardo v. Tillinghast (C.C.A.) 29 F.(2d) 527; United States ex rel. Rojak v. Marshall (D.C.) 34 F.(2d) 219.

The right of expatriation is said to be the natural and inherent right of all people, indispensable to the enjoyment of the rights of life, liberty, and the pursuit of happiness.

A native-born citizen who has lost his citizenship by taking an oath of allegiance to a foreign country cannot resume his citizenship by returning to that country with the intention of again becoming a citizen thereof. Under the British Treaty of May 13, 1870 (16 Stat. 775), citizens of the United States of America who are, have become, or shall become, naturalized according to law within the British Dominions as British subjects shall become aliens, and in order to again become citizens of the United States must fully comply with the naturalization laws as would other foreign-born persons. Reynolds v. Haskins (C.C.A.) 8 F.(2d) 473, 45 A.L.R. 759.

If the plaintiff's ward were capable of renouncing allegiance to the United States, or expatriating himself, by taking the oath of allegiance, he would be a citizen of the British Empire. A person non compos mentis ordinarily does not possess the mental capacity to make an election or enter into a contract. To abandon one's native land and change one's allegiance and loyalty to a foreign people should require the highest degree of mental intelligence. So serious a step is one of importance to both countries, and also to the individual. So far as I am concerned, I shall not, by my decision, give judicial sanction to one without mental capacity renouncing this country and adhering to a foreign flag. After a person has been duly adjudged a lunatic by a court of competent jurisdiction, it is presumed that he is incapable of intelligent action, and has no power by his own will or act to change his state or national domicile from the place therof at the time or after he becomes incompetent, because he lacks the mental capacity to exercise either choice or intention—twin elements generally regarded as essential to a change of domicile or citizenship. In other words, the domicile or citizenship of one becoming mentally incompetent remains his citizenship until his sanity has been restored.

In the case at bar, the plaintiff's ward was judicially declared insane before he took the oath of allegiance to the British Empire, and so far as this record shows, he still labors under that handicap. In fact, his lack of mental power is the basis of this suit. It would seem clear that one whose mental faculties are unbalanced, "in whose chambers of thought chaos reigned supreme, confusion worse confounded," would be wholly incapable of making a choice between his native land and a foreign country. According to the philosophy of enlightened humanity, one could not be held responsible while in such mental state for contracts, and in some instances could not be punished for crimes. The weight of all reason repels the judicial mind from holding that plaintiff's ward could, while insane, become a citizen of the British Empire. The cases are legion that an insane person cannot change his domicile during the period of his mental infirmity. The same rule is applicable to a change of citizenship. Chew v. Nicholson (D.C.) 281 F. 400; Sumrall's Committee v. Commonwealth, 162 Ky. 658, 172 S.W. 1057; Urquhart v. Butterfield, L.R. 37 Ch.Div. 357, 57 L.T.N.S. 780, 36 Week.Rep. 376, 37 L.J.Ch.N.S. 521 (C.A.); Commonwealth of Virginia v. Kernochan, 129 Va. 405, 106 S.E. 367, 30 A.L.R. 601; Coppedge v. Clinton (C.C.A.) 72 F.(2d) 531.

There are no exceptions to the rule that an infant lacks the power to renounce his allegiance to the United States. Even though such minds are immature, they have reason; a lunatic has none, and if an infant lacks the power to expatriate himself, a fortiori so would an insane person. United States ex rel. Baglivo v. Day, Commissioner (D.C.) 28 F.(2d) 44; In re Reid (D.C.) 6 F.Supp. 800.

Having reached the conclusion that plaintiff and his ward are both citizens of the United States and of the state of Kentucky, and some of the defendants also being citizens of the commonwealth of Kentucky, this court has no jurisdiction over the subject of this suit and it should be dismissed. The question of whether the citizenship of the ward or of the committee is controlling is not important, in view of the conclusion I have reached herein, and is not decided.

The plaintiff's petition will be dismissed.