### Ex parte TADAYASU ABO et al.

### Ex parte MARY KANAMO FURYA et al.

Consolidated No. 25294.

District Court, N. D. California, S. D.
June 30, 1947.

On Motion to Vacate Order Aug. 11, 1947.

Wayne M. Collins, of San Francisco, Cal., for plaintiffs.

Tom C. Clark, Atty. Gen., Frank J. Hennessy, U. S. Atty., and R. B. McMillan, Asst. U. S. Atty., all of San Francisco, Cal., for defendants.

GOODMAN, District Judge.

Applicants, all of whom are native born residents of the United States of Japanese ancestry, in the above two applications for writ of habeas corpus, assert that they are unlawfully held in custody by officers of the Department of Justice of the United States for removal and deportation to Japan.

By return filed to the applications, Irving F. Wixon District Director of the Immigration and Naturalization Service of the Department of Justice of the United States for the Northern District of California, admits that the applicants are in custody for the purpose of removal and deportation to Japan as alien enemies of the United States, pursuant to the authority of the Alien Enemy Act of 1798, (50 U.S.C.A. §§ 21–23) and Presidential Proclamations and Regulations of the Attorney-General issued thereunder.

Contemporaneously with the filing of the applications for the writ of habeas corpus, applicants filed actions in equity in this court, wherein they sought cancellation of alleged renunciations of American citizenship made by them while in custody, pursuant to 8 U.S.C.A. § 801(i), upon the ground, inter alia, that such renunciations of citizenship were made under duress and hence are void. It is not alleged anywhere in the habeas corpus proceedings that applicants expatriated themselves in any other manner or under any other provision of law than § 801(i).

Motions of respondent to strike and dismiss in the equity and habeas corpus cases were argued before Judge St. Sure and, in July 1946, granted. Thereafter, further pleadings and motions were filed in all the cases, including motions for summary judgment by both applicants and respondent. On November 18, 1946, the several motions were submitted to Judge St. Sure for consideration and decision upon affidavits and briefs to be filed. Final brief of applicants was filed February 11, 1947. While these proceedings were pending before Judge St. Sure, he became ill and disabled from performing his duties. Thereafter and on February 20, 1947, with the consent of all parties and the judges of this court, the motions under submission to Judge St. Sure were ordered transferred and submitted to me for consideration, because of Judge St. Sure's continued illness. I have had them under study since submission, during such periods of time as, due to the pressure of continuous trial work, I have been able to give them attention.

The applications for the writ and the equity cases involve the determination of important issues of law which are of first impression.

The applications for the writ of habeas corpus bespeak priority of attention and I am ready to decide them, but will defer filing a written opinion setting forth my reasons for decision.

For reasons which will hereafter be given upon the decision of the equity cases, I am of the opinion that the detained applicants are not alien enemies within the provisions of the Alien Enemy Act of 1798 and hence may not be detained for removal or deportation from the United States, pursuant to said Act.

Certain contentions of applicants as to the invalidity of the alleged renunciations of citizenship in the equity cases are also urged in support of the applications in the habeas corpus proceedings. It is not necessary to now determine these contentions because I would rule that applicants are not alien enemies whether the alleged renunciations are valid or invalid.

■ It is asserted in the return of Director Wixon that many of the applicants were and have been disloyal to the United States. But this is not a ground for deportation under the Alien Enemy Act of 1798, except as to persons who are ·alien enemies under its provisions.[1]

The applications for the writ of habeas corpus of all the applicants named are therefore granted.

On Motions to Vacate Order Granting Applications for Writ of Habeas Corpus.

In the order of court granting the petitions for writ of habeas corpus, I stated that the detained applicants are not alien enemies within the provisions of the Alien Enemy Act of 1798 and hence could not be detained for deportation. I further stated that the reasons for decision would be given in an opinion to be filed at the time of decision of the equity suits brought by petitioners. Respondents, in their motions to reconsider and vacate the order granting the writ, have indicated that they have been handicapped in presenting the motions because of lack of knowledge of the nature of the court's reasons for its conclusion. I will therefore briefly indicate the basis of the decision.

■ Admittedly all of petitioners were, at the time of their alleged renunciations of citizenship, native born citizens of the United States residing therein. The basis of their detention by respondents is that prior to and at the time of the alleged renunciations, petitioners were also citizens of Japan and that therefore they automatically became citizens of Japan when the alleged renunciations were effected. The court unequivocally rejects the concept of ·dual citizenship asserted by respondents. The theory that a native born resident American can at the selfsame time be an alien and a citizen of a foreign state, is, in my opinion, judicially wholly unsound. An American citizen as such, owes his entire allegiance to the United States and the United States is entitled to claim from him an indivisible loyalty. A naturalized citizen, at the time of naturalization renounces all allegiance to any foreign government and ·swears undivided fealty to the United States. No less is the allegiance of a native born citizen, for the Constitution makes no distinction between naturalized and native born citizens. It is Constitutionally impossible for a resident citizen of the United States to have at the same time any allegiance to any foreign government.[2]

■ Possession of Japanese citizenship, *in Japan,* by a native born resident American citizen of Japanese ancestry, does not, upon renunciation of American citizenship in the United States, convert that person into an alien until he has voluntarily departed from this country. An alien is defined to be "one born out of the jurisdiction of the United States, and who has not been naturalized under their Constitution and laws." Low Wah Suey v. Backus, 225 U.S. 460, 473, 32 S.Ct. 734, 737, 56 L.Ed. 1165; 2 Kent, 50; 1 Bouvier's Law Dictionary, Rawle's 3d Rev. page 172. It is true that the term "alien" has been extended to apply to a native-born United States citizen who has lost his American citizenship by removal to and acquisition of the citizenship of a foreign country. Reynolds v. Haskins, 8 Cir., 8 F.2d 473, 45 A.L.R. 759. It is also true that the Alien

---

[1] The purpose of § 801.(i) was not to provide the basis for deportation of applicants, but "for the purpose of devising a system of controlling the disloyal" * * * the government, at the time, having no Constitutional means, absent martial law, of so doing as to American Citizens. (Affidavit of John L. Burling of the Alien Enemy Control Unit of the War Division of the Department of Justice, page 10, attached to motion for Summary Judgment.)

[2] The dual citizenship concept in the field of international law (with which we are not here concerned) has to do with situations in which two different sovereigns may lawfully, within their respective territorial confines, claim citizenship of the same person, and he of them, and the international incidents and implications. which result. Talbot v. Jansen, 3 Dall. 133, 164, 1 L.Ed. 540; Perkins v. Elg, 307 U.S. 325, 59 S.Ct. 884, 83 L.Ed. 1320. But that such person may occupy a dual citizenship status, in the sense that he possesses simultaneously the citizenhip of the sovereign state in which he is a domiciled native and that of a foreign sovereign as well, with all the attendant rights and obligations of both, is a principle to which no government would willingly subscribe.

Enemy Act broadly applies to "natives, citizens, denizens, or subjects of a hostile nation or government." 50 U.S.C.A. § 21. Nevertheless, absent any express declaration of Congressional intent, there is no justification for holding that under the Alien Enemy Act, a native born resident American citizen, who renounces his American citizenship pursuant to Sec. 801(i), may be deported, at least as long as he continues to reside here.

 All that the expatriation statute (including § 801(i)) purports to effect is termination of American citizenship. It in no way fixes or determines any particular alien nationality for the expatriate.

By its terms, the Alien Enemy Act applies to subjects of hostile countries who are found within the United States and are "not actually naturalized." 50 U.S.C.A. § 21. Petitioners' status is obviously not within the scope of Section 21.

Assuming the petitioners' renunciations to be valid, they would cease to be American Citizens, but they would not thereby acquire an alien citizenship, which they could not lawfully theretofore have possessed.

The motions to vacate and reconsider are denied, and I will therefore sign the orders for the issuance of the writ.