**BAUER v. WATKINS, Director.**

No. 64, Docket 21093.

United States Court of Appeals
Second Circuit.

Dec. 2, 1948.

Robert G. Zeller, of New York City, for relator appellant.

John F. X. McGohey, U. S. Atty., of New York City, and Harold J. Raby, of New York City, for respondent appellee.

Before L. HAND, Chief Judge, and CLARK and FRANK, Circuit Judges.

L. HAND, Chief Judge.

Bauer has appealed from the denial of a second writ of habeas corpus, issued after our affirmance of the denial of his first writ.[1] We then held no more than that the judgment of the Seventh Circuit in the action for a declaratory judgment[2] had conclusively established that he had forfeited his American citizenship by his induction into the German army in 1940. The Seventh Circuit had said at the end of its opinion—which states all the facts so fully that we need not repeat them here— that it would not pass upon the question whether Bauer was a German or a French citizen; and, since upon his appeal before us he had rested his case only upon the assertion that he was still an American citizen, we too did not consider that question. Now, however, his enemy citizenship does come up, and upon its answer depends whether he is deportable under the Act of 1798.[3] Since the respondent concedes that he is not to be regarded as a "denizen" of Germany, we have to inquire only whether he is either a "native" or a "citizen" of Germany, an issue on which the respondent has the burden of proof. In United States ex rel. D'Esquiva v. Uhl [4] and United States ex rel. Gregoire v. Watkins [5] we decided that under the Act of 1798 a person is a "native" of that state or nation in which the place of his birth is at the time of his proposed deportation. Hence, since Bauer was born in Alsace he is a "native" of France, and the issues are narrowed to whether he is a "citizen" of Germany. Although the record does not contain any evidence that he was ever naturalized in that country before he first came to the United States, it does not follow that under German law he was not a German in spite of his birth in Alsace. It may be that the law of the Third Reich disregarded the acquisition of Alsace by France under the Treaty of Versailles; or that it treated all children of German parents as citizens, no matter where they were born. On the other hand, it may be that the law of France regards all those born in Alsace as French citizens, unless they have been

1 United States ex rel. Bauer v. Clark, 2 Cir., 161 F.2d 729.
2 Bauer v. Clark, 7 Cir., 161 F.2d 397.
3 50 U.S.C.A. §§ 21–24.
4 2 Cir., 137 F.2d 903.
5 2 Cir., 164 F.2d 137.

494

naturalized elsewhere. If so, an initial inquiry may be whether his "repatriation" and induction into the Germany army were sufficient to make him a German citizen. Conceivably, under the German law itself they were designed to do no more than wipe out his American naturalization, reviving his assumed German citizenship of birth. Obviously, the decision as to whether he was a German citizen when he came to this country in 1941 raises a number of obscure questions which no judge has ever passed upon and the evidence upon which the record does not contain.

 Moreover, this is only the first stage of this highly complicated issue, because even though it be held that he was a German citizen, when he came here in 1941, it does not follow that he may not have forfeited that citizenship by his later induction into the American army. As to this the first inquiry will be as to the truth of his story that when he came to this country and was inducted into the American army, he was acting, not as a German spy, but in good faith towards the United States, and that his "repatriation" and his induction into the German army were not of his own choice but were coerced. It is true that Judge Lindley disbelieved this story, but even so the judgment in the declaratory action is not an estoppel, for the falsity of his testimony was a "mediate" fact in deciding that he had forfeited his American citizenship, not an "ultimate" fact, as to which alone estoppel by judgment applies.[6] If he is believed, the next inquiry will be whether what he did in this country—which was treasonable to Germany—forfeited his putative German citizenship. Finally, will be the inquiry, even though he is not believed, whether his consistent efforts since 1945 to disclaim German citizenship have had any effect under German law to rid himself of whatever German citizenship he may have had. In all that we have said we have assumed that "German law" means the law of the Third Reich, in force when the events in question occurred. That may not be the right law to apply; the only relevant question is whether under present German law Bauer is a German citizen; and it is conceivable that the present law of Germany may not attach to events occurring during the existence of the Third Reich the same legal consequences that followed upon them under the law of the Third Reich. For all the following reasons it is apparent that Bauer should not be deported under the Act of 1798 [7] on the ground that he is German citizen. The writ would pro tanto have to be sustained and the relator released upon the record as it now stands. However, if the respondent desires, the issues may be tried again and it may in the end appear that he is so deportable.

 Moreover, he is also held under the warrant of arrest in the proceeding to deport him for an illegal entry, and that proceeding has never been concluded. True, there has been a long delay since this warrant was issued—July 3, 1946—and it can be argued that for this reason he should be discharged from custody under those decisions which have held that such a proceeding may not be used as a means of indefinite detention.[8] However, that doctrine implies that the delay has been unreasonable, and we do not think that the delay has here been shown to have been unreasonable. We can see no reason why, while the proceeding under the Act of 1798 remained undetermined, the deportation proceeding should have been pressed; especially since it was Bauer himself who by the declaratory action caused much of the delay. Indeed, it has not been necessary to resort to the warrant of arrest at all to detain him, and it cannot be said to have been abused. As soon as the proceeding under the Act of 1798 fails, if it does fail, we agree that the deportation proceeding must be brought to a speedy conclusion; but we cannot count any earlier period as relevant in applying the doctrine invoked. The order dis-

---

[6] The Evergreens v. Nunan, 2 Cir., 141 F.2d 927, 152 A.L.R. 1187; United States v. Five Cases, 2 Cir., 156 F.2d 493.

[7] 50 U.S.C.A. §§ 21–24.

[8] United States ex rel. Ross v. Wallis, 2 Cir., 279 F. 401, 403; Caranica v. Na-

gle. 9 Cir., 28 F.2d 955, 957; Saksagansky v. Weedin, 9 Cir., 53 F.2d 13, 16; United States ex rel. Gagliardo v. Karnuth, 2 Cir., 156 F.2d 867; Moraitis v. Delany, D.C., 46 F.Supp. 425, 431, Chesnut, J.

missing the writ will therefore be affirmed; but the case will be remanded for further proceedings not inconsistent with the foregoing opinion.

Order affirmed.

CLARK, Circuit Judge (concurring in the result).

Since detention for deportation may be re-examined upon successive writs of habeas corpus, United States ex rel. Gregoire v. Watkins, 2 Cir., 164 F.2d 137, I do not object to the remand of the case for further hearing here, though I incline to believe that the denial of the first writ—affirmed by us, United States ex rel. Bauer v. Clark, 2 Cir., 161 F.2d 729, certiorari denied Bauer v. Clark, 332 U.S. 839, 68 S.Ct. 210; Id., 332 U.S. 849, 68 S.Ct. 342—on the express finding that relator was a German citizen and an alien enemy was based upon adequate evidence and should constitute an adjudication of the basic issue. I expect, however—though of this I am not sure—that I differ from my colleagues as to the course the case may now take. The opinion herewith states in somewhat minatory detail the complicated issues which must be met presumably—though this is not made explicit—by the government officials seeking the deportation. We of course do not know how far precise proof may be possible or feasible under the chaotic conditions now existing in Germany. Another approach seems to me permissible. It has already appeared that relator came to the United States in 1930 upon a German passport as a German citizen, that in his declaration of intention for American citizenship he stated he was of German nationality, and that after his grant of American citizenship and later return to, and war service in, Germany in 1940 he took steps to regain his German citizenship and was repatriated, receiving, as he concedes, "some document to that effect." These facts, coupled with the disbelief of the trial judges that he re-entered the United States on August 24, 1941, honestly to escape from Germany, rather than fraudulently as a German undercover espionage agent, seem to me properly to establish at least a prima facie case—sufficient to shift the burden of going for-

ward to the relator—that he was and is an alien enemy within the terms of 50 U.S.C.A. § 21 and the proclamation of the President, No. 2526, dated December 8, 1941, 6 Fed.Reg. 6323, Ex. Orders and Adm. Material 1, 1945. Moreover, since this is a review of an order of removal made by the Attorney General for the President, where judicial review is strictly limited, I apprehend that this may be stating the issue too favorably to relator and that more properly it is only whether the evidence was adequate to support the executive, rather than the court, finding. See Ludecke v. Watkins, 335 U.S. 160, 164, 165, 68 S.Ct. 1429; United States ex rel. Schlueter v. Watkins, 2 Cir., 158 F.2d 853; United States ex rel. Hack v. Clark, 7 Cir., 159 F.2d 552, 554.