**UNITED STATES ex rel. BAUER v. SHAUGHNESSY, Acting District Director of Immigration and Naturalization Service.**

United States District Court, S. D. New York.

July 28, 1949.

On Motion for Reargument
June 9, 1950.

See also 178 F.2d 756.

Gunther Jacobson, New York City, for plaintiff.

John F. X. McGohey, U. S. Atty., New York City, by Harold J. Raby, Asst. U. S. Atty., New York City, for defendant.

BONDY, District Judge.

The relator seeks relief from a decision by the Board of Immigration Appeals, dismissing his appeal from an order of deportation and from the Board's orders denying relator's motion to reopen the proceedings for additional evidence, denying relator's petition for release from custody with or without bond, and denying relator's petition for discretionary relief.

Relator, a native of Alsace, came to this country from Germany in 1930. He became a citizen of the United States in 1935. In 1938 he returned to Germany and in 1940 became a member of the armed forces of that country, attaining a rank equivalent to lieutenant, in the German military intelligence service. He returned to this country in August 1941 as a citizen with an American passport. In May, 1942, he entered the United States Army and served therein until December, 1945, when he was given a "blue discharge", a discharge without honor or dishonor, because of his prior service in the German Army and his failure to reveal that service. Immediately thereafter, relator was taken into custody by the Attorney General as an enemy alien and as an alien who had entered the United States without an immigration visa. In 1946 relator brought an action against the Attorney General for a judgment declaring that he was a citizen of the United States. The district judge dismissed the complaint, holding that relator had expatriated himself by taking an oath of allegiance to Germany at the time that he entered the German Army. The United States Court of Appeals for the Seventh Circuit affirmed that decree, Bauer v. Clark, 161 F.2d 397, and the Supreme Court denied certiorari, 332 U.S. 839, 68 S.Ct. 210, 92 L.Ed. 411.

Relator contends that in deciding that he was an alien who entered this country without a visa in 1941, the Board of Immigration Appeals erred in considering the decision in the declaratory judgment action in 1946 as binding upon it because that decision did not determine or even consider his citizenship in 1941 but only his nationality in 1946.

Since relator's expatriation in 1940 was the only basis for the declaratory judgment, the court must necessarily have decided that relator then lost his citizenship. "The judgment of the Seventh Circuit in the action for a declaratory judgment * * * conclusively established that he (Bauer) had forfeited his American citizenship by his induction into the German army in 1940." Bauer v. Watkins, 2 Cir., 171 F.2d 492, 493; United States ex rel. Bauer v. Clark, 2 Cir., 161 F.2d 729. The relator at the time of his entry into the United States in 1941 was, therefore an alien and since he was admittedly not in possession of a visa as required by 8 U.S.C.A. § 213 he is deportable under the provisions of Section 214.[1] See Reynolds v. Haskins, 8 Cir., 8 F.2d 473, 45 A.L.R. 759; United States ex rel. Lapides v. Watkins, 2 Cir., 165 F.2d 1017. The relator's contention that the Board of Immigration Appeals abused its discretion in refusing to release him from custody can not be sustained in view of relator's admission that he was in the German intelligence service shortly before the outbreak of war between the United States and that country and that he was sent to this country as an espionage agent.

Relator also contends that the Board of Immigration Appeals abused its discretion in refusing to the relator the discretionary relief provided by 8 U.S.C.A. § 155(c)[2]: "In the case of any alien * * * who is deportable under any law of the United States and who has proved good moral character for the preceding five years, the Attorney General may * * * suspend deportation of such alien * * * if he finds that such deportation would result in serious

1. See Immigration and Nationality Act, §§ 211, 241, 8 U.S.C.A. §§ 1181, 1251.

2. See Immigration and Nationality Act, § 244, 8 U.S.C.A. § 1254.

economic detriment to a citizen or legally resident alien who is the spouse, parent, or minor child of such deportable alien."

The relator is the husband and father of native born American citizens who would suffer serious economic detriment if the relator were deported. The Board of Immigration Appeals made no finding as to relator's moral character, stating that even though his good moral character be conceded, discretionary relief would not be his as of right and would be refused under the circumstances.

The rules and regulations promulgated by the Attorney General provide for a "hearing" of applications for discretionary relief only before the Presiding Inspector, 8 Code of Fed.Reg. Section 150.6(g), and at such hearing the alien has the right through counsel to introduce evidence, to cross-examine the witnesses appearing against him and to explain or rebut the evidence which they have given. 8 Code of Fed.Reg. Section 150.6(d). If request for discretionary relief is made after the hearing before the Presiding Inspector has closed, the case must be reopened and returned to him for his determination. 8 Code of Fed. Reg.Cum.Supp.1941, Section 150.8(b). The Board of Appeals is not given any authority to hold hearings at which evidence may be introduced. It has authority to consider appeals only. 8 Code of Fed.Reg. Section 90.3.

In denying discretionary relief to the relator, the Board of Immigration Appeals did not base its decision on the facts found by the Presiding Inspector in September, 1946, but on facts many of which are either unsupported by the record or contained only in the opinion of the Circuit Court of Appeals for the Seventh Circuit in Bauer v. Clark, supra, decided 1947. The findings of the Circuit Court except on the issue of relator's citizenship, were not binding on the Board of Immigration Appeals, see Bauer v. Watkins, 171 F.2d 492, 494. The Board, however, treated them as conclusive and without according to the relator any opportunity to rebut or explain. The failure to comply with rules and regulations renders the determination unfair. See Bridges v. Wixon, 326 U.S. 135, 153, 65 S.Ct. 1443, 89 L.Ed. 2103; Sibray v. United States, 3 Cir., 282 F. 795; United States ex rel. Chin Fook Wah v. Dunton, D.C., 288 F. 959. In considering evidence on which the Presiding Inspector did not pass and which the relator was not given any opportunity to rebut, in violation of the regulation of the Attorney General, the Board of Immigration Appeals deprived the relator of a fair hearing on his application for discretionary relief. See United States ex rel. Ohm v. Perkins, 2 Cir., 79 F.2d 533; United States v. Shapiro, 2 Cir., 103 F.2d 775, 777.

The writ therefore will be sustained unless the Immigration and Naturalization Service without any unnecessary delay accords the relator a hearing on the issue of discretionary relief.

### On Motion for Reargument.

In my opinion of July 28, 1949 I stated that it had been conclusively established by a judgment of the Seventh Circuit that relator "forfeited his American citizenship by his induction into the German Army in 1940." Accordingly, I held that when he subsequently entered the United States he did so as an alien without an immigration visa and hence was deportable under the provisions of 8 U.S. C.A. § 214. However, because I was of the opinion that the Board of Immigration Appeals had gone outside the record in denying relator's application for the discretionary relief of suspension of deportation and thereby deprived him of a fair hearing, I sustained the writ unless the Immigration Service accorded him a new hearing on such application. Both sides have moved for reargument. In addition, I have taken testimony, pursuant to their stipulation and request, limited to the issue of the alleged falsification or inaccuracy of the record of the deportation hearing accorded relator by an immigrant inspector on September 23, 1946.

Relator has conceded that the minutes which were taken at the deporta-

tion hearing were accurately transcribed. His contention is that the minutes are neither a complete nor accurate account of what actually took place at the hearing.

The record discloses that at the beginning of the hearing the presiding inspector advised relator, a patent attorney, of his right to be represented by counsel; that relator stated that it was not necessary for him to be so represented; and that he further stated that he was ready to proceed with the hearing at that time without counsel.

Relator admits that he was advised of his right to counsel but testified that he requested the presiding inspector to postpone the hearing to enable him to procure the assistance of an attorney, that this request was refused and that he was told that he had to proceed with the hearing immediately.

Relator also testified that in the course of the hearing he offered a list of his war bond purchases and blood donations as evidence of his loyalty to the United States and good moral character in connection with his application for discretionary relief and that his offer was rejected by the presiding inspector. Relator's wife testified that she was present when the particular incident occurred. The record fails to disclose any such offer or rejection.

All this testimony was contradicted by the presiding inspector and the stenographer, the only other persons present at the hearing.

Relator further testified that certain answers given by him do not appear in the record verbatim and that parts of others were entirely omitted therefrom without his consent. In this connection both the presiding inspector and stenographer testified that, aside from a number of "off the record" conversations, the record is an accurate account of the hearing. The presiding inspector testified that it was his practice in conducting deportation hearings never to treat any discussion as off the record if the alien objected, that he did not depart from this practice in the instant case, and that relator did not at any time during the hearing object to the omission from the record of any off the record conversation.

In view of this sharp conflict in the testimony, consideration of the credibility of the witnesses is of the utmost importance. Although the truth of relator's story about his induction into the German Army and his return to the United States ostensibly as a German spy is not directly in issue before me, the story was elicited on relator's cross-examination as bearing on his credibility. To my mind that story does not ring true and seriously impairs relator's credibility. On the other hand, except for the testimony of relator and his wife, the credibility of the stenographer and presiding inspector remains unimpaired Moreover, both relator and his wife have a far greater interest in the result of this proceeding than either the stenographer or inspector.

I do not believe relator's version of what occurred at the deportation hearing. Accordingly, I find that, aside from a number of off the record remarks which were not objected to by relator, the record is an accurate and complete account of the hearing.

It is relator's contention that even accepting the testimony of respondent's witnesses the practice of the presiding inspector violated 8 Code of Fed.Regs. Section 150.6(b), then in force. That section provides, insofar as pertinent, that the presiding inspector shall "make sure that * * * the record is a verbatim report of everything that is stated during the course of the hearing, including the oaths administered, the warnings given to the alien or the witnesses, and the rulings on objections, except statements made off the record with the consent of the alien or his counsel." Relator urges that such consent must be express and can not be implied from mere silence. He further contends that the record should have indicated when an off the record conversation occurred and that he consented thereto.

I believe that the regulation in question was not intended to require the express consent of an alien and that relator's failure to object to any of the off the record conversations was a sufficient consent on his part within the meaning of the regulation. Nor can I understand how relator would be benefited if the mere fact that there had been an off the record conversation, and that he had consented thereto, had been noted in the record. In any event, since relator has failed to show that any of the statements alleged to have been omitted from the record were material, after he was given full opportunity to specify every omission, it can not be said that he was prejudiced, or that the hearing was unfair, by reason of such omissions.

Relator also contends that he was deprived of the benefit of the notice provided for by Section 5(a) of the Administrative Procedure Act, 5 U.S.C.A. § 1004(a). That section provides, among other things, that "Persons entitled to notice of an agency hearing shall be timely informed of (1) the time, place, and nature thereof; (2) the legal authority and jurisdiction under which the hearing is to be held; and (3) the matters of fact and law asserted." Respondent disputes the applicability of Section 5(a) to relator's deportation proceeding, contending that the proceeding was initiated with the service of a warrant of arrest on relator on July 11, 1946 and hence prior to the effective date (September 11, 1946) of the notice requirements of the Act. Even assuming their applicability, however, relator effectively waived them when, after being informed by the presiding inspector of the nature of the hearing and his right to counsel, he replied that he was ready to proceed with the hearing without counsel. The fact that relator was not aware of the precise source of his right, namely the Administrative Procedure Act (as I am assuming) is entirely immaterial. It can not be doubted that he knew that he was entitled to an adjournment if he was not ready to proceed and that he voluntarily relinquished that right. Thereby he necessarily waived any possible right to further notice.

Since my previous opinion herein, the United States Court of Appeals for the Second Circuit has held that the decision of the Attorney General in refusing discretionary relief to a deportable alien is not subject to judicial review at least where the ground stated for the refusal is not "on its face insufficient". United States ex rel. Kaloudis v. Shaughnessy, 180 F.2d 489, 490. That case is controlling here.

In denying relator's application for discretionary relief on behalf of the Attorney General, the Board of Immigration Appeals stated: "It appears to us that (relator) was hedging in his international activities, hoping to be in a position to profit or at least to safeguard himself, regardless of the outcome of the war. In our opinion this is not such a case as can be sent to Congress with a request for suspension of deportation * * * (Relator) has not at any time during these proceedings shown himself to be a person devoted to this country, fond of its principles, anxious to prove himself to be one to whom we should afford refuge." It can hardly be said that this reason is "on its face insufficient". Accordingly, I have no power to review the decision of the Attorney General in refusing to grant relator's application for suspension of deportation.

Inasmuch as I adhere to that portion of my former decision which held that relator is a deportable alien, it follows that the writ must be dismissed.