## UNITED STATES ex rel. FRACASSI v. KARNUTH.

### No. 2009.

District Court, W. D. New York.
May 26, 1937.

Arnold H. Rickler, of Buffalo, N. Y., for petitioner.

George L. Grobe, U. S. Atty., and John S. Carriero, Asst. U .S. Atty., both of Buffalo, N. Y., for respondent.

KNIGHT, District Judge.

In my view, the petitioner, in order to sustain his claim to American citizenship, must establish that his grandfather Thomas Fracassi became a naturalized American citizen. A fair construction of the evidence is that Thomas Fracassi came into the United States from Italy in or about 1888. The undisputed record is that Thomas Fracassi filed a declaration of intention on

582

April 6, 1894, in Ramsey county, state of Minnesota, in which county the proofs show that he resided in or about that time. The burden rests upon the petitioner to establish his right to citizenship and such burden necessarily carries with it the necessity in this case of showing that the grandfather Thomas Fracassi became a naturalized citizen. There is some evidence in the record that Thomas Fracassi voted in this country. There is included in the evidence a letter under date of February 6, 1937, from the Immigration and Naturalization Service of the Department of Labor, in which it is stated in effect that petitioner's father Giuseppe Donato Fracassi derived citizenship through petitioner's grandfather. There is also certain hearsay testimony to the effect that petitioner's grandfather was naturalized. A communication from the Immigration and Naturalization Service, under date of April 10, 1937, recites, in substance, that the only record with regard to the question of the naturalization of Thomas Fracassi is that he filed a declaration of intention. This communication from the Immigration and Naturalization Service is supported by certificates of the District Director of Immigration and Naturalization Service, St. Paul District; of the Acting Commissioner, Immigration and Naturalization Service, Washington, D. C.; of the clerk of the United States District Court, Third Division (including St. Paul, Minn.); and of the clerk of the state Supreme Court of the state of Minnesota; all reciting that there is no record on file of the naturalization of said Thomas Fracassi in either of said courts. It is evident that the original report of the Immigration and Naturalization Service under date of February 6, 1937, with regard to the citizenship of said Thomas Fracassi is in error and the facts are as stated in the subsequent letter.

Thomas Fracassi returned to Italy about 1907 and resided there until his death in or about 1912. Giuseppe Donato Fracassi, father of petitioner, was born in Italy July 3, 1875, and came to the United States in or about April, 1891, and then was of the age of fifteen or sixteen years. The father returned to Italy in 1903, returned to this country in October, 1905, and has since resided in this country. Giuseppe Donato Fracassi was married in Italy in 1903, and the petitioner was born in Italy on March 3, 1905, came into the United States, landing at New York, N. Y., on October 28, 1907,

and has resided in this country continuously since the last-mentioned date.

Section 4 of the Act of April 14, 1802, 2 Stat. 155, in effect at the time of the alleged naturalization of the paternal grandfather of the petitioner, provided that children of persons duly naturalized under the age of twenty-one years at time of naturalization of the parents "shall, if dwelling in the United States, be considered as citizens thereof." Section 2172, Rev.Stat. 1878, U.S.C. title 8, § 7 (8 U.S.C.A. § 7). Provided the petitioner's paternal grandfather was naturalized, as claimed by the petitioner, the father became a citizen by virtue of the above-cited statute. The Act of April 14, 1802, was made applicable to children born without the United States of alien parents, provided such parents became naturalized during the minority of such child and further provided that citizenship should begin at the time such minor begins to reside permanently in the United States. Act March 2, 1907, § 5, 34 Stat. 1229, U.S.C., title 8, § 8 (8 U.S.C.A. § 8). It is not claimed, however, that the paternal grandfather was naturalized subsequent to the act of 1907. It is, however, a matter of indifference whether the act of 1907 is applicable or not. It is claimed that the paternal grandfather was naturalized in about 1892 or 1893. It is the contention of the government that the grandfather came to this country in or about the year 1890. I think the testimony fairly supports the conclusion that he came to this country in or about 1888. The Act of April 14, 1802, as amended (Rev.St. § 2165), required residence of applicant for citizenship two years before filing of declaration of intention and proof that he has resided in the United States five years at least preceding the granting of citizenship. While sufficient time may have elapsed for his admission to citizenship in 1893, the duration of residence is concededly so close to the five-year period as to lend further force to the claim that the paternal grandfather never was naturalized. Certainly the petitioner has not met the burden of the proof in this respect. It is the claim of the government that even though petitioner's father derived citizenship through naturalization of petitioner's paternal grandfather, petitioner is not entitled to citizenship, because, at the time of birth of the petitioner, the petitioner's father had lost his citizenship. It is uncontradicted that upon return of petitioner's father to Italy in 1903 he was taken

into the Italian army, took the oath of allegiance to Italy, and served for about one year and a half. He continued to reside in Italy until 1907—approximately four and one-half years—before his return to the United States and he re-entered on an Italian passport. Provided petitioner's father voluntarily entered the Italian army there can be no question that he lost his American citizenship. It is fundamental that one can owe allegiance to a single country only. The act of emigrating to a foreign country, swearing allegiance to its government, and entering into its service constitutes expatriation. Juando v. Taylor, Fed.Cas. No. 7,558, 2 Paine, 652. The right of expatriation is natural and inherent. When one swears allegiance to one country, he necessarily denies his allegiance to another. The Act of Congress July 27, 1868, § 1, 15 Stat. 223, section 1999 Rev.Stat. 1878, U.S.C., title 8, § 15 (8 U.S.C.A. § 15), reciting that the right of expatriation is a natural and inherent right to all people, is merely declaratory of the law as it had been recognized long theretofore in this country and as it has long been known in other civilized countries of the world. It is the claim of the petitioner that his father was forced into the Italian army and that his service was not voluntary. Assuming such to be the fact, such involuntary service would not expatriate him as a citizen of this country. While it is true that the Act of March 2, 1907, § 2, 34 Stat.1228 (U.S.C., title 8, § 17 [8 U.S.C.A. § 17]), specifically provides that an American citizen shall be deemed to expatriate himself "when he has taken an oath of allegiance to any foreign State," this like the Act of July 27, 1868, is merely declaratory of the law as it had long prior to that been recognized to be. I do not understand that the government concedes that the father's service in the Italian army was involuntary as asserted by the petitioner, but it may be assumed that the proof sustains this contention. Cases in which the question of involuntary service has been considered in connection with the effect upon the citizenship are such as found in State v. Adams, 45 Iowa, 99, 24 Am.Rep. 760. Whether this service was involuntary does not help the petitioner, since his father was not a citizen of this country. Indeed, the father became naturalized citizen on June 6, 1905, by virtue of his own application granted by the Supreme Court of the state of New York upon his own petition filed in said court. At that time petitioner

was of the age of thirty years. There are facts going to show clearly that the father never claimed citizenship by virtue of any naturalization of Thomas Fracassi, his father.

Two questions remain to be considered. It is conceded that the petitioner in April, 1935, was arrested upon a charge of petit larceny arising from collection of certain moneys and the failure to pay them over to the rightful owner, that he pleaded guilty to the charge and was placed on probation. It is claimed that in or about June, 1935, the petitioner entered Canada from the United States, and there is evidence to the effect that he had been in Canada on other occasions. The petitioner admits that he testified before the examiner that he went to Canada in June, 1935, but upon re-examination he testified that such testimony was false; that he testified to this because, as he said, he "was afraid I would get a year in jail and $500 fine, which I could not pay, and which would mean two years in jail for me, because I had no money, so I took a chance on deportation to beat the two year sentence thinking I would be deported immediately." Upon the first examination the petitioner went into some detail concerning his visit to Canada. On re-examination he testified that he had not been in Canada for two years. The examiner found that, as a matter of fact, this petitioner did depart from the United States in June, 1935, such finding being supported by substantial evidence. This court has no authority to find to the contrary.

The statute, section 3, Immigration Act of February 5, 1917, 39 Stat. 875 (U.S.C., title 8, § 136 [8 U.S.C.A. § 136]), provides that an alien shall be excluded from admission to the United States who has been convicted of a crime involving moral turpitude. Section 19 of the same act (8 U.S.C.A. § 155) provides that in five years after entry any alien who was a member of the excluded class who admits the commission of crime involving moral turpitude is subject to deportation. Petit larceny is a crime involving moral turpitude. United States ex rel. Parenti v. Martineau (D. C.) 50 F.(2d) 902; United States ex rel. Rizzio v. Kenney (D.C.) 50 F.(2d) 418. The statute is applicable to an alien who commits a crime involving moral turpitude within the United States before his last entry into the United States. United States ex rel. Volpe v. Smith, 289 U.S. 422, 53 S.Ct. 665, 77 L.Ed. 1298; Bendel v. Nagle (C.C.A.) 17 F.(2d)

719, 57 A.L.R. 1129; Gomes v. Tillinghast (D.C.) 37 F.(2d) 935. It is the conclusion, therefore, that petitioner never became a naturalized citizen of the United States; that he committed an act involving moral turpitude within five years prior to his apprehension upon the warrant of deportation in the United States prior to his last entry, and that, therefore, the writ must be dismissed.