## ATTORNEY GENERAL OF UNITED STATES v. RICKETTS.

### No. 11594.

Circuit Court of Appeals, Ninth Circuit.

Dec. 30, 1947.

Harvey Erickson, U. S. Atty., and Frank R. Freeman, Asst. U. S. Atty., both of Spokane, Wash., for appellant.

George W. Young, of Spokane, Wash., for appellee.

Before GARRECHT, DENMAN, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

This case presents a problem of dual nationality as affected by a provision of the Nationality Act of 1940, 8 U.S.C.A. § 801.

Appellee's claim of American citizenship being denied by the Immigration and Naturalization Service he sued below to obtain a judgment declaring him to be a national

of the United States.[1] The facts found by the court were that he was born in Oklahoma on February 3, 1902 of native-born parentage. When he was eight years of age his parents took him to Canada where the father, in 1914, became a naturalized British subject. Appellee continued to reside in Canada with his parents until he reached his majority. Three years later (in 1926) he returned to the United States where he remained for a period of approximately six months after which he returned to Canada, residing there until 1936 when he again entered the United States. Since that time he has remained here constantly, engaged in business in the State of Washington, where he participated in civic affairs, registered as a voter, and voted in elections. It was found that he "did not by his own voluntary act expatriate himself, but to the contrary has continuously asserted his claim of United States citizenship." The court concluded as a matter of law that appellee is entitled to the benefit of the second proviso contained in § 401(a) of the 1940 act, 8 U.S. C.A. § 801(a), and accordingly adjudged him a citizen.

The statute provides that a person who is a national of the United States, whether by birth or naturalization, shall lose his nationality by obtaining naturalization in a foreign state, either upon his own application or through the naturalization of a parent, "provided however, That nationality shall not be lost as the result of the naturalization of a parent unless and until the child shall have attained the age of twenty-three years without acquiring permanent residence in the United States: Provided further, That a person who has acquired foreign nationality through the naturalization of his parent or parents, and who at the same time is a citizen of the United States, shall, if abroad and he has not heretofore expatriated himself as an American citizen by his own voluntary act, be permitted within two years from the effective date of this chapter to return to the United States and take up permanent residence therein, and it shall be thereafter deemed that he has elected to be an American citizen." Failure to return and take up permanent residence during the prescribed period is deemed by the statute to be a determination on the part of such person to discontinue his status as an American citizen and estops him from thereafter claiming that status.

The decisive question here is whether there is substantial evidentiary support for the finding quoted above, namely, that appellee did not by his own voluntary act expatriate himself. The Attorney General insists that prior to appellee's entry into the United States for permanent residence he was shown to have elected to become a Canadian national. The argument is based mainly on two facts, (1) that appellee, during his minority, had held public office in Canada, and (2) that after attaining his majority he had voted once at a provincial election in Alberta and had several times voted in that province at school and municipal elections.

■ Concerning the office held, appellee testified that the post was that of counsellor or secretary of the school board in an isolated community where there were many foreigners who could not write English. Someone with knowledge of the language was needed for the post, and appellee, who was at the time about eighteen years old, undertook to fill it. The Attorney General concedes that the mere holding of public office during minority is not an act of expatriation, since an infant is incapable of a binding choice, Perkins v. Elg, 307 U.S. 325, 59 S.Ct. 884, 83 L.Ed. 1320. It is contended only that appellee's conduct in this respect bears on his mental attitude. Similar if more persuasive effect is claimed for his conduct in voting, that is to say it is not contended that the act of voting amounts to expatriation as a matter of law, but that it is strong evidence of an election to expatriate.

Appellee's conduct in other particulars is said to evidence such an election, notably statements of Canadian nationality which he made in the filling out of forms in various of his clashes with the Immigration Service. He appears to have been halted several times at the Canadian border or arrested by the immigration authorities

---

[1] The action is authorized by 8 U.S.C.A. § 903.

after entry into the United States. Concerning the declarations contained in the forms made out on these occasions appellee testified that the immigration people, notwithstanding his claims to the contrary, at all times insisted that he was a Canadian national and that his best and only effective course was to return to Canada and then seek entry into this country, presumably as a quota immigrant, on the basis of his being a Canadian citizen. He said that the formal statements were, in effect, dictated or coerced by the Service. A like explanation was proffered of a statement contained in a selective service form, made out in Spokane while appellee was under arrest by the Service and was being threatened with deportation.

■ On the other side there is testimony of numerous witnesses in support of the court's finding that appellee has continuously asserted his claim of United States citizenship. His persistence in returning to this country and his long residence here, on an apparently permanent basis, are facts tending further to negative the thought that he had voluntarily expatriated himself. It is undeniable that his conduct was equivocal, but not more so, perhaps, than was his status. By virtue of his American birth and the later naturalization of his father in Canada he was at once a citizen of the United States and a Canadian national. His American citizenship is deemed to continue unless he has been deprived of it through the operation of a treaty or congressional enactment, or by his "voluntary action in conformity with applicable legal principles." Perkins v. Elg, supra, 307 U.S. page 329, 59 S.Ct. page 887, 83 L.Ed. 1320.

■ The proviso does not undertake to specify what voluntary act or acts will amount to an expatriation.[2] In that respect the framers of the legislation seem to have been content to follow the not very precise verbiage of Chief Justice Hughes in Perkins v. Elg. The departmental decisions bearing on the subject, so far, at least, as they have been called to our notice, are neither consistent nor particularly persuasive.[3] In considering cases affected by the statutory proviso we must remember that Congress intended to extend liberal treatment to those of dual nationality regardless of their age at the time of the Act's passage or the length of their prior residence abroad. Being remedial, the proviso is entitled to a liberal construction.[4]

■ It is not our function to weigh the evidence or to determine questions of credibility. The findings below are not clearly erroneous and they support the judgment.

Affirmed.

---

[2] Section 401 of the Act does enumerate certain conduct which shall result in the loss of nationality, but these provisions are new and it is not claimed that they were intended to have retroactive effect.

[3] In the Matter of W——, reported in Volume 1 of the Administrative Decisions under the Immigration and Nationality Laws, page 24, the Board of Immigration Appeals held that the phrase of the second proviso "and who at the same time is a citizen of the United States" effectively bars all those who acquired foreign nationality solely through a parent's naturalization and who, without returning to the United States, had reached the age of twenty-three years prior to the date the Nationality Act became effective. The holding had the approval of the Attorney General. In a later decision, In the Matter of S——, reported in the same volume at pages 476, 481, this view of the Act was repudiated, also with the approval of the Attorney General. The latter adopted a memorandum from the Office of the Solicitor General, pointing out that if all persons who had lost American citizenship at the time of the enactment of the statute, under views of loss of citizenship theretofore prevailing, were excluded, there would have been no occasion for the second proviso. The phrase stressed by the Board of Appeals was said to be merely definitive of the case of dual nationality being dealt with. This view, we think, is the correct one.

[4] For a good discussion of the circumstances leading up to the adoption of the Act see Dos Reis v. Nicolls, 1 Cir., 161 F.2d 860.