## SCHIOLER v. UNITED STATES et al.
### No. 46C1318.

District Court, N. D. Illinois, E. D.
Jan. 26, 1948.

Rogers & Rogers, of Chicago, Ill., for plaintiff.

Otto Kerner, Jr., U.S. Atty., of Chicago, Ill., for defendant.

SULLIVAN, District Judge.

July 18, 1945, plaintiff filed her petition for a declaratory judgment, asking that the court declare that petitioner is a citizen of the United States; that she never lost her citizenship by reason of her husband's petition for Danish citizenship and by reason of her having travelled to the United States on a Danish passport and a visitor's vise.

The petition sets out that petitioner was born in Chicago, Illinois, on December 23, 1888, and lived there until 1931, when her husband's profession as an engineer took them and their children to Denmark. That she returned to Chicago during the summers of 1937 and 1938, travelling on a United States passport. That during the month of July, 1942, when the safety of petitioner's children was in danger, and the press of the Germans became very great, petitioner's

husband, Paul Schioler, an American citizen born in San Francisco, on June 22, 1883, was urged by the police of Denmark to apply for Danish citizenship. That at that time application was made by Paul Schioler for himself and his family; that this petitioner signed no documents requesting Danish citizenship for herself, and that she did not actively engage in any Danish politics; and that it was her understanding that the change of citizenship made by her husband was only for the duration of the war. That Petitioner's husband died on March 31, 1945, and that she then made plans to come to the United States early in the spring of 1946; that she visited the American Consul in Denmark and requested a passport to travel to the United States, but was refused, and she was forced to travel on a Danish passport with a visitor's vise. That upon arrival in the United States she applied to the Department of State for a United States passport, but the same was refused because of the outstanding Danish passport issued to her. Petitioner claims that although she was forced to travel to the United States on a Danish passport because of the fact that her husband had made application for Danish citizenship, that this was done only because of the war, and that petitioner did not thereby lose her American citizenship. That because of these conflicting claims petitioner is in doubt as to her status, and asks this court for a declaratory judgment adjudging that she is a citizen of the United States, and never lost her citizenship by reason of her husband's petition for Danish citizenship, and consequently being obliged to travel to the United States on a Danish passport.

March 14, 1947, the United States and the Attorney General filed motions to dismiss the petition on the ground that the same fails to state a claim upon which relief can be granted, either under Sec. 903, Title 8, or Sec. 806, Title 8 U.S.C.A., of the Nationality Code because no right to sue the United States is granted by said Section 903, Title 8, and because the United States has not consented to be sued.

April 14, 1947, petitioner asked leave to make the Secretary of State an additional party defendant, and summons to issue, which leave was granted by the court. At the same time, on the motion of the United States Attorney, the cause was dismissed as to the United States and the Attorney General.

August 5, 1947, the Secretary of State answered the petition, setting out that petitioner did sign documents asking to become a Danish citizen, whereby she lost her American citizenship, and that she has no rights as an American citizen, and asking that her petition for a declaratory judgment be denied.

A hearing was held at which petitioner appeared in open court and testified. The court then took the matter under advisement, and briefs were filed by both sides.

The question before me for decision is whether, because of the husband's application for Danish citizenship, in which petitioner is said to have joined, petitioner thereby lost her status as an American born citizen.

Sec. 801 of 8 U.S.C.A., the Nationality Act of 1940, provides: "General means of losing United States nationality. A person who is a national of the United States, whether by birth or naturalization, shall lose his nationality by: (a) Obtaining naturalization in a foreign state, either upon his own application or through the naturalization of a parent having legal custody of such person: * * *"

Defendant urges that while plaintiff was a United States citizen by birth, she nevertheless divested herself of that United States citizenship by obtaining naturalization in Denmark.

Plaintiff alleges in her petition, and also so testified, that during the year 1931 she went with her husband and their two children to Denmark, where his work as an engineer took him. That her husband's parents were Danish citizens, but that both petitioner and her husband were native born citizens of the United States. That on or about May 31, 1941 petitioner's husband sought and obtained Danish citizenship. Photostatic copy of the application was presented at the hearing, and introduced by the Government as its Exhibit I, and the Secretary of State urges that in connection with

Pal Schioler's application, petitioner signed the following statement:

"This application is subscribed to by the wife whose signature is to be found below and who declares on her honor that the information regarding her contained therein is in close accordance with the truth."

Also that in connection with said application petitioner and her husband signed the following statement:

"I, the signer, Engineer P. C. Schioler and wife, Marie J. Periolat, declare hereby in connection with the application filed by us regarding Danish citizenship, that it is our desire that also our two children begotten by us, Carl Clement Schioler, born April 26, 1925, and Margarethe Carolyn Schioler, born May 3, 1926, be given Danish citizenship."

Plaintiff alleges in her petition, and also testified at the hearing, that this application for Danish citizenship was made for the protection of themselves and their children. That her husband was in Denmark carrying on his profession as an engineer when World War II broke out and that they were apprehensive for their own safety and that of their children. That it was common knowledge that the Germans were after students; that their two children were of the student age and they feared the Germans would take them. That the husband's decision to ask for Danish citizenship was made upon the advice of Danish officials and because he felt it would be of protection to them and their children in the situation in which they then found themselves because of the war. Plaintiff testified that she took no oath of allegiance to Denmark, and performed no acts which she believed would indicate that she intended to become a citizen of Denmark. No affirmative act was shown to have been performed by her indicating that she voluntarily and willingly renounced her American citizenship.

The Secretary of State cites the case of Bauer v. Clark, 7 Cir., 161 F.2d 397, where Bauer lost his American citizenship by taking an oath of allegiance to Germany. In that case it was shown that Bauer deliberately went to Germany intending to remain there; that he joined the German army, and subsequently returned to the United States as a German spy. In the instant case everything done by petitioner was done under the compulsion of fear for the safety of herself, her husband and their children, and in the interest of preserving their very lives when they found themselves during World War II in a country occupied by and virtually in command of the Germans. I do not believe that this is the free and voluntary renunciation of plaintiff's American citizenship which I think the statute contemplates. In the case of Perkins v. Elg, 307 U.S. 325, 59 S.Ct. 884, 889, 83 L.Ed. 1320, involving the citizenship of a child born in the United States and taken during his minority to the country of his parents' origin, and upon attaining his majority electing to retain his American citizenship, the Supreme Court thus defines expiration: "Expatriation is the voluntary renunciation or abandonment of nationality and allegiance." In her testimony petitioner says she took no oath of allegiance to Denmark and that she never intended to renounce her American citizenship, and that it was her understanding that only her husband and the children were included in the application for Danish citizenship.

The court believes that American citizenship is a priceless heritage involving not only privileges but duties and responsibilities, and that among those duties and responsibilities are primarily loyalty and allegiance to the United States. However, in considering this case, the court also recognized that self-preservation is nature's first law, and that it is quite natural for mothers and fathers to seek in every way to preserve the lives of their children when their safety is threatened. Where an American citizen finds himself and his family, as Paul Schioler did, in a theatre of war, their safety threatened, facing the gravest of dangers, even possible death or internment, and in this extremity, on the advice of officials of the foreign state where he happens to be, makes application for foreign citizenship in an effort to preserve the lives and safety of his family, his wife joining in the application, I am of the opinion that under such circumstances the joinder of the wife is not such a voluntary renunciation or abandonment of her nationality as to forfeit her American-born citizenship.

I therefore conclude, after a careful consideration of all the facts in this case, that petitioner, by joinder in her husband's application, did not lose her native-born United States citizenship, and that she remains a citizen of the United States and entitled to all the rights and privileges of such United States citizenship, and I so hold.