KATSUMI YOSHIDA
v.
DULLES, Secretary of State.
Civ. No. 1257.

United States District Court,
D. Hawaii.
Dec. 4, 1953.

Wirin, Rissman & Okrand, Los Angeles, Cal., Fong, Miho, Choy & Chuck, Honolulu, Hawaii, for plaintiff.

A. William Barlow, U. S. Atty., Louis B. Blissard, Asst. U. S. Atty., Dist. of Hawaii, Honolulu, Hawaii, for defendant.

WIIG, District Judge.

This is an action for a declaratory judgment under Section 503 of the Nationality Act of 1940, 8 U.S.C.A. § 903,[1] petitioning for a judgment declaring plaintiff to be a national of the United States. A Certificate of Loss of Nationality was issued on November 24, 1952, stating that plaintiff had expatriated himself by serving in the Japanese armed forces as a Japanese national. Defendant filed a general denial to the complaint.

Section 401 of the Nationality Act of 1940, 8 U.S.C.A. § 801,[2] provides in part as follows:

"A person who is a national of the United States, whether by birth or naturalization, shall lose his nationality by:

\* \* \* \* \* \*

"(c) Entering, or serving in, the armed forces of a foreign state unless expressly authorized by the laws

---

1. Now Immigration and Nationality Act, § 360, 8 U.S.C.A. § 1503.

2. Now Immigration and Nationality Act, § 349, 8 U.S.C.A. § 1481.

**620**

of the United States, if he has or acquires the nationality of such foreign state; * * *."

■■■ The principles of law governing this type of case are set forth succinctly in Lehmann v. Acheson, 3 Cir., 206 F.2d 592, 594–595:

"'Expatriation is a voluntary renunciation or abandonment of nationality and allegiance.' Perkins v. Elg, 1939, 307 U.S. 325, 334, 59 S. Ct. 884, 889, 83 L.Ed. 1320.

"Conscription into the Army of a foreign government of one holding dual citizenship is sufficient to establish prima facie that his entry and service were involuntary. Perri v. Dulles, 3 Cir., 206 F.2d 586.

"It is well settled that expatriation under Sec. 401(c) is 'limited to cases where the induction into the foreign military service may be said to have been voluntary.' Dos Reis v. Nicolls, 1 Cir., 1947, 161 F.2d 860, 861; Podea v. Acheson, 2 Cir., 1950, 179 F.2d 306; Pandolfo v. Acheson, 2 Cir., 1953, 202 F.2d 38; Cf. Tomaya Kawakita v. United States, 1952, 343 U.S. 717, 72 S.Ct. 950, 96 L.Ed. 1249.

"In Doreau v. Marshall, 3 Cir., 1948, 170 F.2d 721, 723 we held, in construing the provisions of Sec. 401, that 'the very essence of expatriation is that it be voluntary'."

Plaintiff gained admission to the United States for the purpose of prosecuting the present action under a Certificate of Identity granted on the plea of need of his physical presence at the trial. Although numerous exhibits were received in evidence, the plaintiff was the only witness who gave oral testimony. The Court finds the following facts to have been established at the trial:

■■■ Plaintiff was born in Seattle, Washington, of Japanese parentage, and by virtue of that fact acquired dual nationality under the laws of the United States and of Japan. Upon completion of his high school course, where he had been a "four-letter man," he traveled to Japan in April 1941, with his mother and two sisters, to take his father's ashes for burial in Japan. Plaintiff intended to return in the fall to go to Willamette College on a "football scholarship" which had been offered to him. Although plaintiff and his mother endeavored to make arrangements to return to the United States in the fall of 1941, they were unable to obtain transportation. A notice of conscription into the Japanese army was sent to plaintiff in April 1942. He tried to evade conscription by getting work as a judo instructor. Another notice to report was sent to plaintiff February 1, 1943, which he complied with, although he did not want to go into the Japanese army and bear arms against his own people. He did not protest his induction into the Army because he knew it was compulsory and protests would be of no avail. Plaintiff had heard of the Japanese police, *Kempei Tai*, and of rumors that the police dealt "very bluntly" with any one who attempted to evade service in the Army.

At the time of the cessation of hostilities, plaintiff was serving in a Japanese military hospital in Shanghai, China. When the American forces came to Shanghai, he met with former teammates and volunteered to continue his service in a liaison department in order to work for the benefit of the United States and to be with his friends. In so doing, he refused, at least on one occasion, to obey orders to return to Japan. He finally returned to Japan in compliance with orders, and was discharged from the Army in July 1946.

■■■ Defendant urges that plaintiff's service in the Army from the date of the cessation of hostilities to his discharge was voluntary and therefore he expatriated himself under the statute. It is apparent to the Court that plaintiff's induction into the military service in 1943 was involuntary because of his attempt to avoid conscription and his duty as a Japanese national to comply with the conscription laws. It seems incongruous to say that the brief period of so-

called voluntary service under the circumstances in this case would result in expatriation. Obviously, the plaintiff would not have found himself in this position had it not been for the original involuntary induction, and it is most unlikely that, had plaintiff not been a member of the Japanese army, he would have volunteered for service with the Japanese army at that time.

After his discharge from the Army, plaintiff was gainfully employed in several positions, working for the Occupation Forces in Japan and in Korea. Evidence in this respect has no relation to circumstances under which plaintiff became a member of the Japanese army, but it is of assistance to the Court in evaluating his testimony.

This is a hearing *de novo* on the question as to whether the plaintiff expatriated himself by reason of his conscription into a foreign army. The defendant offered no evidence proving expatriation, and has failed to rebut the presumption that plaintiff's service in the Japanese army was involuntary.

The general denial to the complaint in this case was filed February 5, 1953. Thereafter, on June 17, 1953, defendant filed his motion to set the case for trial, and notice of motion. The trial date was set for October 8, 1953, at 9 a. m. Because the Court was occupied with the trial of other cases at that time, the trial was continued to October 12, 1953, at 2 p. m. On that date, defendant filed a motion to amend his answer and for the first time set up an affirmative defense to the complaint on the ground that it was laid in the improper venue inasmuch as plaintiff had not claimed a permanent residence in Hawaii. The Court allowed the amended answer to be filed, stating, however, that the defendant would not be permitted to press the affirmative defense set forth in the amended answer.

■ In connection with matters relating to venue, plaintiff testified that his mother died in Japan in July 1946. On February 12, 1949, he was married in Japan and his wife's parents came to Honolulu in 1952. Plaintiff's younger brother lives in Honolulu, as do his wife's elder brother and younger sister. Although plaintiff had never been in Honolulu prior to his appearance here for this trial, it is apparent that his claim of permanent residence in Honolulu was not made in bad faith. In any event, the defendant waived any objection to venue by his delay in raising the question until the date of the trial after plaintiff had traveled to Honolulu from Japan for the purpose of testifying in his own behalf.

This Court has jurisdiction of the case.

It is the opinion of the Court that plaintiff's conscription into the Japanese army under the circumstances of this case was not his free and voluntary act within the meaning of Section 401(c) of the Nationality Act of 1940, 8 U.S. C.A. § 801(c), and that his service in the Japanese army did not cause him to lose his status as a national of the United States.

Judgment will be entered declaring the plaintiff to be a national of the United States under the provisions of Section 503 of the Nationality Act of 1940, 8 U.S.C.A. § 903.