Juan **QUILODRAN–BRAU**, Plaintiff,

v.

**T. J. HOLLAND**, District Director, Immigration and Naturalization Service, Defendant.

Civ. A. No. 18922.

United States District Court
E. D. Pennsylvania.

July 19, 1955.

J. J. Kilimnik, Philadelphia, Pa., for plaintiff.

W. Wilson White, U. S. Atty., Eugene J. Bradley, Asst. U. S. Atty., Philadelphia, for defendant.

CLARY, District Judge.

This is an action by plaintiff, Juan Quilodran-Brau, for a declaratory judgment to set aside a deportation order entered against him and to restrain the defendant, J. W. Holland, District Director, Immigration and Naturalization Service, (erroneously appearing in the caption as T. J. Holland) from deporting him. He asserts in his complaint that the hearings conducted by a Special Inquiry Officer of the Immigration and Naturalization Service were null and void because of failure to conduct the

hearings pursuant to the provisions of the Administrative Procedure Act; that the plaintiff was deprived of due process of law under the Fifth Amendment of the Constitution of the United States; that the findings of fact and conclusions of law of the Special Inquiry Officer were not based on reasonable, substantial and probative evidence; that the hearings were unfair and unreasonable, and finally that the Government has failed to meet its burden of proof. However, at the final hearing held in this Court on the 1st day of June, 1955, in view of the decision handed down on the previous day by the United States Supreme Court in the case of Marcello v. Bonds, 349 U.S. 302, 75 S.Ct. 757, the contention that the hearings were not held pursuant to the provisions of the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., was withdrawn.

The plaintiff, an alien, a native and subject of Chile, lawfully entered the United States and paid a "head tax" in connection therewith on August 26, 1924. His occupation was that of merchant seaman and as such he has on many occasions entered and left the United States. On the 29th day of February, 1932, in the Borough of Brooklyn, Kings County, State of New York, he was arrested and charged with conspiracy, a felony, and the misdemeanor of unlawfully possessing burglar's tools. He was acquitted of the crime of conspiracy but convicted on the charge of possessing burglar's tools and was sentenced to the Penitentiary where he served a term of 13 months. He was paroled on May 28, 1933, but was rearrested on June 21, 1933 for violation of parole and was confined until February 16, 1934, when he was surrendered to the Immigration authorities in a deportation proceeding then pending against him. Hearings were held at Ellis Island, a recommendation of deportation was made on the ground that he had been convicted of a crime involving moral turpitude, the decision was approved by a Board of Review, and he was deported in the summer of 1934 from New York on the S. S. Santa Isabel. His testimony in the present action indicates that he continued as a merchant seaman and has been in and out of the United States in that capacity rather regularly during the years. On February 28, 1948, at Mobile, Alabama, in the southern division of the District of Alabama, he was arrested and charged with stealing government property. On March 2, 1948 he pleaded guilty to the charge and was sentenced to imprisonment for a period of 10 days and to pay a fine of $10. The fine was paid and he served 8 of the 10 days sentence in the Federal Detention House in Mobile, Alabama.

Plaintiff's last entry into the United States was on October 28, 1953, at the port of Boston, Massachusetts, as a seaman aboard the S. S. "Arthur Fribourg". On November 19, 1953 he was called for a hearing, asserted by his present counsel to have arisen out of an application for citizenship then pending, before J. Marvin Hostetter, United States Immigration Officer, at Philadelphia, Pennsylvania. At that hearing, which was conducted in the Spanish language, through an interpreter, he was represented by counsel. The Immigration Officer's questions and plaintiff's answers developed the information above set forth, viz., that he had been arrested, convicted and served the sentences above related; that he had been deported in the summer of 1934 on the S. S. Santa Isabel from the port of New York. Shown the warrant of deportation dated March 24, 1934, he readily admitted that the warrant of deportation referred to him. The Immigration and Naturalization Service thereupon issued a warrant of arrest which was served upon the plaintiff on November 20, 1953. Hearings on the said warrant were held at Philadelphia, Pennsylvania, before Loyd H. Matson, Special Inquiry Officer of the Immigration and Naturalization Service, on April 26, 1954, May 3, 1954, May 21, 1954 and August 16, 1954. The warrant of arrest contained only two charges: (1) that he was subject to deportation under Section 241(a) (1) of

the Immigration and Nationality Act, 8 U.S.C.A. § 1251(a) (1), in that, at the time of entry, he was within one or more of the classes of aliens excludable by the law existing at the time of such entry, to wit, aliens who have been arrested and deported, consent to apply or reapply for admission not having been granted by the proper authority under Section 212 (a) (17) of the Act, 8 U.S.C.A. § 1182 (a) (17); and (2) having been convicted of a crime involving moral turpitude under Section 212(a) (9) of the Act; possessing burglar's tools and conspiracy, having in his possession a jimmy, one brace, three bits, a canvas bag and a searchlight (the New York conviction and sentence). In the notice concerning the hearing, however, dated April 7, 1954, sent to the plaintiff by the Immigration and Naturalization Service and admittedly received by him, a third charge was added that at the time of entry, he was within one or more of the classes of aliens excludable under the provisions of Section 212(a) (9) of the Immigration and Nationality Act, because of his conviction of the crime of theft of government property, Title 18 U.S.C. § 82.[1] The hearing scheduled for April 20, 1954 was postponed until April 26, 1954, at which time the first hearing was held.

In the four hearings before the Special Inquiry Officer, on advice of his present counsel, the plaintiff refused to testify to the facts readily admitted by him at the hearing of November 19, 1953. Presented into evidence were certified copies of the records of his convictions, the original of the warrant of deportation, the original decision of the Board of Review on the Ellis Island hearings of 1934, and an unauthenticated copy of the hearings held at Ellis Island. Plaintiff's counsel strenuously objected to the admission of any of these documents but they were admitted over his objection. A decision was rendered by the Special Inquiry Officer in which he ruled against all of the plaintiff's contentions and

recommended that he be deported on the ground that he was in the United States in violation of the Immigration and Nationality Act, in that, once having been deported and not having obtained the permission of the Attorney General to apply for readmission he should be excluded from the United States. Further, the Special Inquiry Officer held that he should be excluded on the ground that he had been convicted of a crime involving moral turpitude, the theft of government property. The Special Inquiry Officer found that the misdemeanor charged in the New York conviction, possessing burglar's tools, was not a crime involving moral turpitude. An appeal was taken to the Board of Immigration Appeals which was heard on briefs and oral argument on October 12, 1954. A decision was rendered on January 14, 1955 denying the appeal. A warrant of deportation was then issued on the 21st day of January, 1955, by J. W. Holland, District Director of the Immigration and Naturalization Service in Philadelphia, Pennsylvania. Upon being notified to appear for actual deportation, plaintiff brought the present action on May 6, 1955. The Court entered a temporary restraining order pending hearing and determination of the action for declaratory judgment. Final hearing was held, as aforesaid, on June 1, 1955.

Plaintiff's counsel has here advanced the identical contentions made before the Special Inquiry Officer and the Board of Immigration Appeals. The record there made clearly established the facts above outlined. The chief complaint is directed at the admission into evidence of plaintiff's sworn statement on November 19, 1953 and the unauthenticated copy of the record of the hearings at Ellis Island in 1934. These records were produced from the files of the Immigration and Naturalization Service. As stated before, there were produced in connection therewith the original warrant of deportation and the action of the Board of Review of the Immigration

---

1. Now 8 U.S.C.A. § 641.

and Naturalization Service. A casual scrutiny of these two documents which are signed by the then Chairman of the Board of Review, now Chairman of the Board of Immigration Appeals, reveals that each document was signed and authenticated by an Assistant Secretary of Labor. Under the circumstances I see no error in the action of the Special Inquiry Officer in admitting the entire record as supporting the Government's contention that this alien had been previously deported.

■ Plaintiff's present counsel complains that the record made at the hearing on November 19, 1953 was improperly admitted into evidence because it was not shown conclusively that the plaintiff properly understood the questions addressed to him and he now challenges the competence of the interpreter. This objection is entirely without merit. Plaintiff was represented at that hearing by competent counsel, known to the Court, and one who has had wide experience in Immigration and Naturalization matters. Any challenge to the competency of the interpreter would, of necessity, have to be made at that hearing. There is nothing in the record to indicate that the plaintiff here did not fully understand the nature of the questions put to him at that hearing. Intelligent questions were asked and intelligent answers were given. Unfortunately for plaintiff's present counsel's position, apparently truthful answers were given by plaintiff.

Plaintiff's present counsel also contends that the record did not show that plaintiff's then counsel advised the client that he did not have to make any statement whatsoever. The statement of the contention reveals the answer. This Court will not assume that an able and respected lawyer did not properly advise the plaintiff.

■ Another contention made by plaintiff's counsel is that since the Special Inquiry Officer made a finding that the crime on which he was previously deported did not in the present state of the law involve moral turpitude, the deportation in 1934 must be declared null and void; that, therefore, plaintiff here was not in the class of persons previously deported who require permission from the Attorney General to re-enter the country. The plaintiff in 1934 permitted the administrative action to become final. He did not seek a writ of habeas corpus to test the legality of the action. He actually was deported and pursuant to the law then in existence. He cannot now seek to reopen and test the validity of his prior deportation. United States ex rel. Koehler v. Corsi, 2 Cir., 60 F.2d 123.

■ Plaintiff's counsel also argues that since the Alabama conviction involved only a trivial sum of money the crime therefor did not involve moral turpitude and for that reason the second finding of the Special Inquiry Officer must be struck down. The cases generally hold that conviction of larceny, petit or grand, involves "moral turpitude" with respect to deportation proceedings against an alien on the ground of conviction of a crime involving moral turpitude prior to entry. United States ex rel. Chartrand v. Karnuth, D.C., 31 F.Supp. 799. See also Pino v. Nicolls, D.C.D. Mass.1954, 119 F.Supp. 122, 128 (larceny of a dozen golf balls); Tillinghast v. Edmead, 1 Cir., 1929, 31 F.2d 81 (larceny of $15); Wilson v. Carr, 9 Cir., 1930, 41 F.2d 704; United States ex rel. Amato v. Commissioner, D.C., 18 F.Supp. 480, and United States ex rel. Fracassi v. Karnuth, D.C., 19 F.Supp. 581.

Further trivial objections advanced to the findings of the Special Inquiry Officer are that the age and description of the plaintiff as contained in prior records do not coincide with the actual facts. There is a rather wide discrepancy as to age but the plaintiff has admitted that he was the person involved in all of the proceedings. There was a question as to whether identity had been sufficiently established because of the presence or absence of a mole on plaintiff's nose. One of the earlier records had noted a mole on the nose. The Special Inquiry Officer noted

some imperfections of the skin on the nose which could conceivably be called a mole. These objections are entirely without merit.

The scope of a review by this Court of the action of an administrative agency is strictly limited by Section 10 of the Administrative Procedure Act, 5 U.S.C. A. § 1009. I have carefully reviewed the record in this case and find that the action taken was neither arbitrary, capricious, nor an abuse of discretion. No constitutional rights of the plaintiff were infringed and the hearings were conducted in complete accordance with the procedures required by law. I agree with the findings of the Special Inquiry Officer and affirm his Findings of Fact and Conclusions of Law. No evidence having been introduced by the plaintiff which would warrant any change in the findings therein contained, it follows that judgment must be entered in favor of the defendant and the action dismissed.

An appropriate order will be entered.