**PETRO v. McGRATH, Atty. Gen.**

**No. 10616.**

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 5, 1950.

Decided Nov. 16, 1950.

Hallock P. Long, Washington, D. C. (James H. McCoole, Washington, D. C., on the brief), for appellant.

William R. Glendon, Asst. U. S. Atty., Washington, D. C. (George Morris Fay, U. S. Atty. and Ross O'Donoghue and Joseph M. Howard, Asst. U. S. Attys., all of Washington, D. C., on the brief), for appellee.

Before CLARK, PRETTYMAN and PROCTOR, Circuit Judges.

CLARK, Circuit Judge.

When the appellant returned to the United States, his presence was determined to be illegal, and he was declared subject to deportation to Canada. He filed an action in the United States District Court to be declared an American national, and from an adverse judgment he now appeals.

There is no dispute on the facts. The appellant was born in Oklahoma in 1900 and was taken by his parents to Canada in 1910. On December 29, 1912, the appellant's father became a naturalized citizen of Canada. In 1920 or 1921 appellant voted for the first time in a Canadian election; he voted again in 1930, 1934 and on attempting to vote in 1935 he was informed he had been "dropped" from the voters' list as he was an American citizen. Appellant voted again in 1940. In March 1942 the appellant returned to the United States but on March 10, 1943, was informed his admission was erroneous. He was told to return to Canada. Consequently, he filed this action in the court below for a declaratory judgment seeking a determination of his American citizenship.

While in Canada the appellant never took an oath of allegiance, never served in military forces, never held public office, nor renounced his American nationality, but has alleged at all times that he is an American. He has not voted since the effective date of the Nationality Code of 1940. On his return to this country the appellant registered under the Selective Service Act for the draft in Pennsylvania.

The statute herein involved is Section 401 of the Nationality Code of 1940, 54 Stat. 1137, 8 U.S.C.A. § 801. It provides:

"A person who is a national of the United States, whether by birth or naturalization, shall lose his nationality by:

"(a) Obtaining naturalization in a foreign state, either upon his own application or through the naturalization of a parent having legal custody of such person: * * * *Provided further,* That a person who has acquired foreign nationality through the naturalization of his parent or parents, and who at the same time is a citizen of the United States, shall, if abroad and he has

not heretofore expatriated himself as an American citizen by his own voluntary act, be permitted within two years from the effective date of this chapter to return to the United States and take up permanent residence therein, and it shall be thereafter deemed that he has elected to be an American citizen. Failure on the part of such person to so return and take up permanent residence in the United States during such period shall be deemed to be a determination on the part of such person to discontinue his status as an American citizen, and such person shall be forever estopped by such failure from thereafter claiming such American citizenship; or

\* \* \* \* \* \*

"(e) Voting in a political election in a foreign state \* \* \*."

This Section became effective January 13, 1941, Bertoldi v. McGrath, Attorney General, 86 U.S.App.D.C. 1, 178 F.2d 977. Consequently Petro had until January 13, 1943, to return to the United States and elect to be a citizen of the United States. The appellant did in fact return in March 1942 and by his action is deemed to have made his election to become a citizen of the United States.

The only further controversy here is whether Petro had, while abroad, expatriated himself as an American citizen by his own voluntary act. The Government contends the court must look to the appellant's intention and belief as manifested by his conscious actions; these the Government insists shows the appellant intended to expatriate himself. What actions? The acts of voting in 1920 or 1921, 1930, 1934, 1940 and attempting to vote in 1935, are the only actions pointed to by the Government besides long continued residence in Canada.

In Attorney General v. Ricketts, 9 Cir., 1947, 165 F.2d 193, we have an almost identical fact situation. The only exception being that the lower court found that Ricketts was a United States citizen, and here Petro was found by the lower court not to have such a status. The appellate court merely refused to reverse the findings in the Ricketts case. Here we are asked to do so. In the Ricketts case the only evidence to support expatriation was the finding that Ricketts had voted in local elections; that is the situation in the instant case. The Ninth Circuit Court of Appeals did not feel that this finding was sufficient to overturn the decision in favor of Ricketts' citizenship, and we in this case do not feel it is sufficient to support the finding of voluntary expatriation by Petro.

As regards the long continued residence abroad, namely, in Canada that cannot be considered a ground for voluntary expatriation since no statute so provided until the Nationality Code of 1940, supra, was passed. And we have already stated the appellant complied with the applicable provision of that statute.

Reversed.